# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| ISONOVA TECHNOLOGIES LLC, | |
| Plaintiff/Counter Defendant, | No. 20-CV-71-CJW-KEM |
| vs. | **ORDER** |
| DAVID L. RETTIG and OVAINNOVATIONS LLC, | |
| Defendants/Counter Plaintiffs. | |

_____

IsoNova Technologies LLC moves to compel OvaInnovations LLC and David Rettig to produce financial information that IsoNova argues is relevant to Defendants' claimed damages on its antitrust and other claims (abuse of process, tortious interference, and defamation). Doc. 147. The motion is **granted in part** and **denied without prejudice in part**.

IsoNova seeks to compel OvaInnovations to respond to its fourth set of interrogatories and sixth set of requests for production, which it characterizes as seeking documents and information related "to Defendants' financial condition, financing, and investors." Doc. 148. Specifically, IsoNova seeks interrogatory responses and documents showing:

- All loans and lines of credit obtained by OvaInnovations since its inception for any purpose, including funding for operations, expansion, capital investment, or acquisitions; the name of the lender; the date of the loan or line of credit; the amount; and the terms.
- Any personal guaranty executed by Rettig for any loan or line of credit.
- The identity of individuals and entities (other than initial investors, who OvaInnovations has already disclosed) who have invested capital in

OvaInnovations or otherwise provided funds or assets to Rettig to benefit OvaInnovations; the date of the investment; the amount; and the purpose.

- All purchases or leases of equipment or facilities to be used by OvaInnovations.

Docs. 147-2 to 147-4.

OvaInnovations argues that IsoNova did not fully meet and confer on this issue. After OvaInnovations objected that this discovery was irrelevant, IsoNova sent a letter (dated January 21, 2022) citing portions of OvaInnovations' countercomplaint to demonstrate the relevance of the requested financial information. Doc. 149. IsoNova noted that to supports its monopolization counterclaims, OvaInnovations alleged that "the economic structure of the markets for purchasing inedible eggs and selling dried eggs is vulnerable to monopolization," as successful entry into the markets is costly and time consuming. Doc. 47. OvaInnovations alleged that a potential competitor needed a large capital investment, including real estate, research and development capabilities, facilities, transportation, and personnel. *Id.* OvaInnovations also alleged that "economies of scale"—bulk-buying supply materials—are necessary to compete. *Id.* OvaInnovations alleged that IsoNova prevents others from entering the market through exclusive dealing agreements with both sellers and buyers of inedible egg product, which prevents competitors from bulk-buying supply materials or from selling their product to the limited number of potential buyers. *Id.* OvaInnovations alleged that it was "well-financed" such that it would be a successful market entrant if not for IsoNova's exclusivity contracts. *Id.*

IsoNova also noted that OvaInnovations' claimed damages include "increased cost of capital."[1] Doc. 149. OvaInnovations' counterclaims include:

---

[1] "Cost of capital represents the return a company needs to achieve in order to justify the cost of a capital project, such as purchasing new equipment or constructing a new building." *See* Adam Hayes, Cost of Capital, *Investopedia*, https://www.investopedia.com/terms/c/costofcapital.asp (last updated March 4, 2022).

2

Case 1:20-cv-00071-CJW-KEM   Document 188   Filed 05/02/22   Page 2 of 10

- **abuse of process**, based on allegations that IsoNova's claims in this lawsuit are frivolous and brought to bankrupt OvaInnovations so that IsoNova maintains its monopoly on the inedible egg industry;
- **tortious interference with prospective economic benefit**, based on allegations that at least one inedible egg supplier and one buyer would have contracted with OvaInnovations if not for IsoNova's use of exclusivity contracts, filing this lawsuit, and making false statements about OvaInnovations; and
- **defamation**, based on IsoNova lying to its customers about the quality of OvaInnovations' product.

Doc. 47. For each of these three claims, OvaInnovations seeks damages that include "increased costs of capital," as well as "increased costs of sales and marketing," "increased costs of goods sold," and lost profits that OvaInnovations would have invested in research and development to ultimately lower its costs. *Id.* In addition, for both the tort and antitrust claims, OvaInnovations seeks damages based on "[i]nability to compete with IsoNova on price due to increased costs from IsoNova's conduct to thwart competition." *Id.*

OvaInnovations sent a letter in response (dated January 27, 2022). Doc. 147-5. OvaInnovations disagreed that the requested discovery was relevant to its counterclaims. With regard to its allegations that a large amount of initial start-up capital was necessary to break into the inedible egg market, OvaInnovations noted it had already produced discovery related to OvaInnovations' initial investors (in response to IsoNova's second Requests for Production). OvaInnovations stated the new discovery was duplicative, noting that IsoNova's second Request for Production asked for "balance sheets[;] audited and unaudited financial statements[;] profit and loss statements[;] accounts payable and receivable[;] documents showing issued convertible securities option and call rights[;] and documents identifying investors," while the new Requests for Production sought "evidence of loans[;] lines of credit[;] personal guarantees[;] [and] individuals and entities

3

who possess convertible securities, options, call rights, or other investment in OvaInnovations." *Id.* OvaInnovations also noted the new interrogatories asked OvaInnovations to identify all equipment or facilities purchased or leased, but IsoNova asked in its first set of interrogatories for OvaInnovations to identify all assets, all leases, and "all contracts or agreements [it has] with any facility for drying [e]gg [p]roduct." *Id.* OvaInnovations concluded that whether Rettig "has made any personal guarantees since" the time of initial investments "and whether OvaInnovations has obtained any new investors is not relevant." *Id.*

The parties talked on the telephone about this discovery dispute (and others) on February 24, 2022. *See* Doc. 147-1. According to IsoNova, OvaInnovations continued to assert that ongoing investor information was irrelevant. *Id.* According to OvaInnovations, IsoNova "was unwilling to discuss a potential compromise," and its "arguments . . . focused less on why they needed to know the identity of the investors and more on wanting to see the slide deck[ presentation]s provided to potential investors." Doc. 156-1. OvaInnovations also notes IsoNova "made conclusory statements like, 'if you were unable to get loans, we need to know,' . . . 'you have to supplement what [Rettig] is saying to these people to obtain financing,' . . . and 'we're entitled to see every single document you have and you've provided to any potential investor.'" *Id.* OvaInnovations also states IsoNova refused to discuss narrowing the discovery time frame to some period before the scheduled trial date. *Id.* Within minutes after the telephone call, OvaInnovations emailed IsoNova that it wanted additional time "to see if we can find any common ground related to the investor information . . . discussed . . . on the call" and asked IsoNova to wait to file any motion to compel until March 4 while OvaInnovations reviewed "whether we continue to stand by our objections or if we will provide any of the requested information" (notably, IsoNova failed to mentioned this email in its motion). Doc. 156-3. OvaInnovations cited a recent order in which I cautioned the parties that future failures to fully meet and confer could result in sanctions. *Id.*; *see* Doc. 146. IsoNova responded that the phone call satisfied their meet-and-confer

4

obligations and that they would allow OvaInnovations until February 28 to decide whether it intended to maintain its objections or whether it would instead produce responsive documents. Doc. 156-4.

OvaInnovations sent a follow-up email on February 28, 2022 (again, IsoNova neglected to mention this communication in its motion). Doc. 156-6. In the letter, OvaInnovations stated that during the telephone call, IsoNova argued that "if OvaInnovations was unable to obtain capital or a loan because of IsoNova's alleged monopoly, IsoNova is entitled to such information." *Id.* OvaInnovations noted that its counterclaim alleged it was well-financed, not that it had been unable to obtain funding (but did not mention IsoNova's point that the counterclaim also sought damages based on "increased costs of capital"). OvaInnovations also stated it had already produced initial investor information, including convertible debt documents. In terms of Rettig's communications with investors, OvaInnovations agreed to produce additional slide decks provided to investors, even though it did "not feel it was relevant." *Id.* OvaInnovations also requested that the parties agree on a discovery cut-off date—i.e., if either party entered into new contracts with suppliers or customers after a certain date, discovery would not need to be supplemented. OvaInnovations reasoned it would make it difficult for the experts to have to continuously update their calculations and opinions based on supplemental productions. OvaInnovations proposed the "cut-off date be June 15, 2022, which is approximately two weeks prior to the first expert disclosures." *Id.*

IsoNova filed the motion to compel on March 1, 2022 (prior to receiving OvaInnovations' supplementation). Doc. 147. On March 4, after it had already filed the motion to compel, IsoNova responded to OvaInnovations' most recent meet-and-confer letter. Doc. 156-7. In addition to the slide decks that OvaInnovations agreed to supplement, IsoNova requested "additional marketing materials" as well as "any other documents provided to actual/potential investors, all communications with actual/potential investors and all communications with any third-party financiers," including "any documents provided in an effort to obtain financing of any type, including

5

any loan applications or other documents requested by or submitted to any financial institution or private placement financing." Doc. 156-8.

OvaInnovations responded that same day. Doc. 156-9. OvaInnovations stated that it was working "to gather the relevant documents related to investors and potential investors" and that it could not "yet specify exactly which documents will be produced," as it did not know the universe of potential documents. Doc. 156-10. It noted it planned to supplement its responses to the fourth set of requests for production "as appropriate and subject to our prior objections." *Id.* Finally, OvaInnovations noted IsoNova's letter did not respond to its request for a discovery cut-off date. *Id.*

In the motion to compel, IsoNova argues that initial investor information is insufficient. IsoNova argues that if OvaInnovations is obtaining "capital, equipment, and leases on similarly favorable terms as they did in 2020," this tends to disprove OvaInnovations' damages of "increased cost of capital" and "inability to compete . . . due to increased costs." Doc. 148. Thus, IsoNova argues later investor information is necessary to compare and contrast to initial investor information and to disprove OvaInnovations' damages. IsoNova also notes that OvaInnovations entered the market during a global pandemic and that "IsoNova is entitled to test Defendants' . . . assertion that IsoNova alone was to blame for unfavorable capital terms Defendants allegedly obtained in 2020," rather than the pandemic. *Id.*

In response, OvaInnovations argues that IsoNova's requested discovery is irrelevant. Doc. 156. OvaInnovations argues it does "not claim an injury related to inability to obtain financing from investors." *Id.* It acknowledges seeking damages for "increased cost of capital" but states in a conclusory manner that the increased "cost does not open the door to provide all of Defendants' capital investments, especially since once OvaInnovations was established it had the financing in place to commence doing business." *Id.* OvaInnovations also argues that if the motion to compel is granted, the timeframe should be limited to January 26, 2021 (the date the counterclaim was filed)—

6

one and a half years prior to the date they previously proposed. OvaInnovations also argues IsoNova did not adequately meet and confer.

In reply, IsoNova notes "ongoing financial information is critical to determining whether Defendants did have increased capital costs, how much the increase was, and when that alleged damage ended (if ever)." Doc. 157. IsoNova argues nothing that OvaInnovations has produced so far would allow IsoNova to calculate damages based on "increased cost of capital." *Id.* IsoNova notes its prior discovery requests sought "balance sheets, financial statements, profit and loss statements, and accounts payable and receivable," and acknowledges that OvaInnovations may have produced documents in response "identify[ing] a loan[ and] the loan payment amount." *Id.* But IsoNova asserts its current requests for "identification of loans, lines of credit, personal guarantees and others who made capital investments," as well as equipment and facilities leases and purchases, are not duplicative because they seek "more detailed information" about the "terms of loans, sales and leases that would also identify interest rates, [and] payment terms." *Id.*

Regarding the failure to meet and confer, IsoNova argues that OvaInnovations' agreement to supplement discovery with updated investor slide decks was not related to the current discovery requests, but rather prior requests. Thus, IsoNova argues it was not hasty in filing the motion to compel.

On the one hand, I agree with OvaInnovations that IsoNova does not seem to have met and conferred about this issue in good faith. IsoNova's position seems to be that because the Local Rules require at least one telephone call between the parties before a motion to compel is filed,[2] a single telephone call is all that is required to discharge its meet-and-confer obligations. A phone call is the *bare minimum*. As I have instructed the parties before, they must work together *in good faith* to attempt to come to compromises and resolve discovery disputes without court intervention. Here, according

---

[2] *See* **LR 37(a)**.

to OvaInnovations, IsoNova's primary focus on the meet-and-confer telephone call was the production of investor slide decks, which OvaInnovations ultimately agreed to produce. After the call, OvaInnovations noted this court's previous warning about failing to meet and confer, and it noted it would supplement its discovery responses and produce some to-be-determined investor documents. But IsoNova did not offer to further talk with OvaInnovations about this issue once OvaInnovations gathered the relevant documents. Instead, IsoNova stated it would be filing a motion to compel in a week's time without waiting to see what additional documents OvaInnovations produced.

I further note that IsoNova's characterization of the requested discovery throughout the meet-and-confer process is extremely broad and seems at odds with how it characterizes the discovery in its current motion. For example, OvaInnovations states that during the meet-and-confer phone call, IsoNova stated it was entitled to "every single document" OvaInnovations provided to potential investors; and in the follow-up meet-and-confer letter IsoNova sent *after* filing the motion to compel, IsoNova stated it wanted any communication OvaInnovations had ever had with an actual or potential investor, as well as any documents OvaInnovations had ever provided to banks or the like to obtain financing. Perhaps these requests relate to other discovery requests, as IsoNova characterizes the slide decks. But the fact that this is not clear to the court (and perhaps OvaInnovations as well) suggests that IsoNova did not adequately attempt to obtain this discovery from OvaInnovations through the meet-and-confer process.

On the other hand, I agree with IsoNova that additional investor information is relevant to OvaInnovations' damages, which allege OvaInnovations faced increased "cost of capital" based on IsoNova's actions in filing this lawsuit and using exclusivity contracts. OvaInnovations continues to object to producing this information on relevance grounds and offers nothing but conclusory statements to rebut IsoNova's point that it needs to be able to compare later capital costs to start-up costs to see if OvaInnovations really suffered increased costs as alleged.

I generally find relevant the dates of OvaInnovations' loans, lines of credit, or other investments; the amounts; and the terms (which would include interest rate, repayment terms, and whether Rettig gave a personal guaranty); as well as purchases or leases of equipment or facilities. But I do not find that this means IsoNova is entitled to every communication OvaInnovations ever made to a bank or potential investor. I cannot weigh in with any more precision on this dispute, however, as IsoNova failed to fully meet and confer before filing this motion. I also decline to address OvaInnovations' argument about the timeframe for discovery, since (according to OvaInnovations) IsoNova has refused to discuss the matter with them, but I generally note IsoNova is entitled to responsive documents at least through June 15, 2022, as originally proposed by OvaInnovations.

I previously warned the parties about resorting to motion practice without meeting and conferring in good faith beforehand. Doc. 146. Here, although further discussion may not have completely alleviated the need for a motion to compel, it does seem like further discussion could have narrowed the scope of the dispute and made the parameters clearer for the court. It appears that IsoNova was completely unwilling to engage in any sort of compromise during the meet-and-confer process, requesting an extremely broad swath of documents (i.e., any communication ever to an investor), but then in its motion, attempted to portray the scope of the request as narrower. IsoNova's failure to mention the additional meet-and-confer emails after the teleconference further support that it was not acting in good faith.

I do not find attorney's fees appropriate under Federal Rule of Civil Procedure 37(a)(5). But a court has "inherent authority" to sanction a party for filing a discovery motion without meeting and conferring in good faith as required by Federal Rule of Civil Procedure 37(a)(1) and Local Rule 37(a).[3] And indeed, I specifically warned the parties

---

[3] *See* **Frank Brunckhorst Co., LLC v. Ihm**, No. 11-1883 CAB (NLS), 2012 WL 12868259, at *3 (S.D. Cal. Apr. 18, 2012); *see also* **Krueger v. Ameriprise Fin., Inc.**, No. CIV. 11-2781

9

that "future failure to meet and confer and to seek to resolve disputes without court involvement could very likely result in sanctions." Doc. 146.

Accordingly, I am inclined to sanction counsel for IsoNova $1,000 for failing to meet and confer in good faith before filing the motion to compel. Before imposing this sanction, however, I will give IsoNova the opportunity to be heard on this matter.

IsoNova's motion to compel (Doc. 147) is **granted in part and denied without prejudice in part for failure to meet and confer**. IsoNova must show cause in writing by **May 16, 2022**, why it should not be sanctioned for filing a motion to compel without fully meeting and conferring in good faith.

**SO ORDERED** on May 2, 2022.

*Kelly K.E. Mahoney*
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa

---

SRN/JSM, 2014 WL 8108458, at *6-7 (D. Minn. July 7, 2014) (discussing court's inherent sanction authority).