# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| ISONOVA TECHNOLOGIES LLC, | |
| Plaintiff/Counter-Defendant, | Case No. 20-CV-71-CJW-KEM |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| DAVID L. RETTIG, et al., | |
| Defendants/Counter-Claimants. | |

At issue is the interplay and application of the spousal privilege and attorney-client privilege under Iowa law. Defendants David Rettig and OvaInnovations, LLC, (collectively, OvaInnovations) refused to produce responsive emails between Rettig and his wife, claiming "spousal privilege" on a privilege log. OvaInnovations also refused to produce responsive emails between Rettig, his attorneys, and his wife as attorney-client privileged.

Plaintiff IsoNova Technologies, LLC, moved to compel the production of all emails to, from, or copying Rettig's wife, arguing that the spousal privilege applies only to testimony and that the presence of Rettig's wife on attorney emails destroys the confidentiality necessary for attorney-client privilege. Docs. 285, 285-1. Defendants filed a resistance (Doc. 303), and IsoNova filed a reply (Docs. 332). **I grant the motion in part and deny the motion in part**.

### I.   BACKGROUND

Defendant Rettig previously worked for IsoNova's parent company and was on the board of IsoNova. He started his own company, Defendant OvaInnovations, that competes with IsoNova in the inedible-egg market. IsoNova brings state-law claims of misappropriation of trade secrets, tortious interference with business expectancy, and

breach of confidentiality agreement (the latter against Rettig only). Doc. 223. OvaInnovations counterclaimed with federal antitrust claims under the Sherman Act and Clayton Act, as well as state-law claims of tortious interference with prospective economic benefit and defamation. Docs. 47, 231.

OvaInnovations withheld some documents responsive to IsoNova's discovery requests as privileged. OvaInnovations produced a privilege log identifying these documents. *See* Doc. 285-4. The privilege log claims "spousal privilege" over emails between Rettig and his wife (and no one else); as well as over emails between Rettig, his wife, and others. *Id.* The privilege log also lists some emails between Rettig, his wife, and his attorneys as withheld under attorney-client privilege or under both attorney-client and spousal privilege. *Id.* IsoNova moves to compel the production of all emails to, from, or copying Rettig's wife, and Defendants resist.

## II. DISCUSSION

Defendants bear the burden of proving attorney-client privilege.[1] State law governs the application of privilege in a diversity case.[2] Defendants note that they have alleged federal counterclaims and thus address privilege under both Iowa state law and the federal common law. As IsoNova notes, courts have held that state law controls the application of privilege, despite the existence of a federal counterclaim, when the discovery "sought can be relevant only to state law claims."[3] This is consistent with

---

[1] *Iowa Network Servs., Inc. v. Sprint Commc'ns Co.*, No. 4:10-cv-00102-JEG-RAW, 2011 WL 13151672, at *2 (S.D. Iowa Feb. 15, 2011).

[2] *Union Cnty., Iowa v. Piper Jaffray & Co.*, 525 F.3d 643, 646 (8th Cir. 2008) (citing **Fed. R. Evid. 501**).

[3] *Platypus Wear, Inc. v. K.D. Co.*, 905 F. Supp. 808, 811-12 (S.D. Cal. 1995); *accord* ***Lego v. Stratos Lightwave, Inc.***, 224 F.R.D. 576, 578 (S.D.N.Y. 2004); *see also* ***Guzman v. Mem'l Hermann Hosp. Sys.***, No. CV H-07-3973, 2009 WL 427268, at *5, *7 (S.D. Tex. Feb. 20, 2009) (collecting cases in which courts applied state law on privilege when both federal and state claims were raised but "the evidence sought [wa]s relevant only to the state-law claims" and adopting this majority approach).

Federal Rule of Evidence 501, which provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."

Here, the documents claimed as privileged relate to Rettig's "personal finances" and decision to leave Rembrandt and form OvaInnovations. *See* Doc. 285-4. They do not appear relevant to Defendants' claim that IsoNova engaged in anticompetitive conduct. Accordingly, Iowa law governs whether the documents are privileged.

### A. *Spousal Privilege*

The marital-communications privilege under Iowa law is codified by statute: "Neither husband nor wife can be examined in any case as to any communication made by the one to the other while married, nor shall they, after the marriage relation ceases, be permitted to reveal in testimony any such communication made while the marriage subsisted."[4] IsoNova argues that by the statute's plain terms, it applies only to "examin[ations]"—testimony or questioning—not to written communications.

IsoNova relies on a statement taken out of context from *State v. McPhillips* to bolster its argument.[5] In that case, a criminal defendant argued that his counsel had provided ineffective assistance by failing to challenge a search warrant that relied on statements his wife had made to the police.[6] The court "assume[d defendant's] wife was 'examined' concerning marital 'communications' as those terms are used in the statute."[7] The court held the marital-communications privilege did not apply, however, because a search warrant proceeding is not a "case" within the meaning of the statute.[8] In a footnote, the court noted the parties also disputed whether the wife provided "'testimony'

---

[4] **Iowa Code § 622.9**.

[5] 580 N.W.2d 748 (Iowa 1998).

[6] *Id.* at 754.

[7] *Id.* at 755.

[8] *Id.*

3

within the meaning of the second part of [the statute]."[9] The court suggested the second part of the statute likely did not apply, since "the marriage relation was still intact at the time [defendant's] wife spoke with the authorities."[10] Nevertheless, even assuming otherwise, the court noted the wife's statements to police were not "testimony," defined as "a declaration by a witness in court or during a deposition."[11] The court concluded the footnote by stating "[p]rivate communications in a nontestimonial setting, such as occurred here, do not fall within the scope of § 622.9."[12] IsoNova relies on this statement to argue that the marital-communications privilege does not apply outside the testimonial setting. But the court was clearly only addressing the second clause of § 622.9 that specifically refers to "testimony." Here, the issue is whether requiring Rettig to produce the documents amounts to "examin[ing]" him about confidential marital communications (since Rettig and his wife are still married). The Iowa Supreme Court explicitly stated in *McPhillips* that it was not addressing the meaning of "examined" in the statute.[13]

OvaInnovations relies on *State v. Countryman*.[14] In that case, police seized from a stolen car incriminating notes between the criminal defendant and her husband.[15] The trial court admitted the notes as evidence at trial over the defendant's objection based on the marital communications privilege.[16] The Iowa Supreme Court stated "[t]he marital privilege is indeed very broad, prohibiting disclosure of any protected communications

---

[9] *Id.* at 755 n.2.

[10] *Id.*

[11] *Id.* (quoting *Roosevelt Hotel Ltd. P'ship v. Sweeney*, 394 N.W.2d 353, 355 (Iowa 1986)).

[12] *Id.*

[13] IsoNova also relies on out-of-state authority discussing the marital testimonial privilege, which is distinct from the marital communications privilege. The statute codifying Iowa's version of the marital testimonial privilege, Iowa Code § 622.7, was repealed in 1983. *See* 7 Laurie Kratky Doré, **Iowa Practice Series § 5.501:4(A)** (Nov. 2022 update).

[14] 572 N.W.2d 553 (Iowa 1997).

[15] *Id.* at 560-61.

[16] *Id.* at 561.

between married persons."[17] The court noted, however, that "the law will not protect the confidence of marital communications where the married persons themselves do not," as when, for example, a third party overhears communications between married persons and testifies as to those communications.[18] The court held that although the example "deal[s] with oral communications, . . . the same rule applies to written marital communications."[19] Thus, the court held the trial court properly admitted the notes abandoned in the stolen vehicle.[20]

As OvaInnovations notes, the Iowa Supreme Court did not hold that the communications privilege does not apply to written communications as a matter of law. And indeed, the Iowa Supreme Court has recognized in older cases that the marital communications privilege applies to written communications between spouses.[21]

IsoNova seeks to distinguish these cases, as they dealt with the admissibility of evidence at trial, rather than the discoverability of such evidence. But if the privilege applies to exclude the evidence at trial, I see no reason why OvaInnovations should be required to produce the evidence to IsoNova in discovery. The purpose of the privilege is to "promote marital harmony and stability" and "encourage candid communications between" spouses.[22] This purpose is hindered just the same by requiring the disclosure of confidential marital communications for use in discovery as it is by requiring the disclosure of such communications during a trial. Accordingly, I find that the spousal

---

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *See Rodskier v. Nw. Mut. Life Ins. Co. of Milwaukee, Wis.*, 248 N.W. 295, 298 (Iowa 1933) (holding inadmissible at trial letters sent between spouses under marital communications privilege); *Vacuum Oil Co. v. Carstens*, 231 N.W. 380, 382-83 (Iowa 1930) (same).

[22] *State v. Anderson*, 636 N.W.2d 26, 30-31 (Iowa 2001).

5

privilege applies to emails between Rettig and his wife (when no other parties are included on the emails).

OvaInnovations also claims spousal privilege over emails between Rettig, his wife, and third parties (without claiming another privilege, like attorney-client). The spousal privilege protects only *confidential* marital communications. Thus, the addition of a third party on the email renders the spousal privilege inapplicable. OvaInnovations must produce those emails claimed as privileged solely under the spousal privilege that include senders or recipients other than Rettig and his wife.

### *B. Attorney-Client Privilege When Spouse Present*

OvaInnovations claims attorney-client privilege or both spousal and attorney-client privilege over a number of emails between Rettig, his attorneys, and his wife. IsoNova argues that the inclusion of Rettig's wife on these emails—who is not involved in the inedible egg business in any way—destroys the attorney-client privilege.

Communications otherwise protected by the attorney-client privilege "may nevertheless be discoverable if made in the presence of, or disclosed to, a third party."[23] A third party's presence does not destroy the privilege, however, when the presence "is 'essential for the rendition of a legal opinion'"[24]—for example, as with the presence of an accountant or financial advisor during settlement discussions.[25] IsoNova argues that Rettig's wife's presence was not necessary and thus, her presence on the email chains destroys the attorney-client privilege.

IsoNova does not cite any cases addressing the interplay between the attorney-client privilege and spousal privilege. OvaInnovations, on the other hand, cites three, all

---

[23] *Fenceroy v. Gelita USA, Inc.*, 908 N.W.2d 235, 248 (Iowa 2018).

[24] *Id.* (quoting *Tausz v. Clarion-Goldfield Cmty. Sch. Dist.*, 569 N.W.2d 125, 127 (Iowa 1997)).

[25] *Tausz*, 569 N.W.2d at 127; *cf*. *State v. Deases*, 518 N.W.2d 784, 788 (Iowa 1994) (presence of correctional officers did not destroy patient-physician privilege when officers were necessary to protect medical staff and "to enable the defendant to obtain treatment").

from outside of Iowa. In *Hiskett v. Wal-Mart Stores, Inc.*, the District of Kansas held that under either Kansas or federal law, attorney-client privilege was not waived when the client later showed the privileged communication to her spouse.[26] The court cited *Federal Practice and Procedure*, which notes "it is not a waiver when the disclosure is made in the course of another privileged relationship, as when the client tells his wife that he told his lawyer."[27] In *L-3 Communications Corp. v. Jaxon Engineering & Maintenance, Inc.*, the court held that the attorney-client privilege protected attorney-client emails forwarded to the sender's wife and that work-product privilege (but not attorney-client privilege) applied when an employee on the attorney-client email chain forwarded the emails to another employee's wife (her husband was also on the original email chain).[28] And in *United States ex rel. Scott v. Humana, Inc.*, the court held that privilege applied to an email and its attachments, created for the purpose of obtaining legal advice for the plaintiff's claims, when the plaintiff sent the email to his wife and later showed the attachments to his attorney.[29] These cases all involve a communication between a client and his attorney, and a separate communication between the client and his spouse (about the attorney-client communication). The facts here are slightly different in that the attorney-client and spousal communication is one and the same.

Some courts have agreed with IsoNova and held that the presence of a spouse on an attorney-client communication destroys the attorney-client privilege unless the spouse's presence was necessary for the lawyer to effectuate the representation.[30] But

---

[26] 180 F.R.D. 403, 406 (D. Kan. 1998).

[27] 24 Charles A. Wright et al., **Federal Practice & Procedure § 5507** (Apr. 2023 update).

[28] No. 10-cv-02868-MSK-KMT, 2014 WL 3732943, at *3-4, *6 (D. Colo. July 29, 2014) (appearing to apply federal law).

[29] No. 3:18-CV-61-GNS-CHL, 2019 WL 7404032, at *4-5 (W.D. Ky. Sept. 24, 2019) (applying Kentucky law on attorney-client privilege but appearing to apply federal law on spousal privilege).

[30] *See, e.g.*, **Leone v. Fisher**, No. 3:05-CV-521 (CFD)(TPS), 2006 WL 2982145, at *3-5 (D. Conn. Oct. 18, 2006) (applying federal law); **Struve v. Gardner**, No. 1:19-cv-04581-RLY-MJD,

7

these courts largely do not address the existence of a spousal privilege, and thus, I do not find that Iowa courts would apply the attorney-client privilege in this manner. It is clear that under Iowa law, if Rettig had forwarded every attorney-client email to his spouse, the emails would have remained privileged by application of the spousal privilege. It does not make sense then that by including his spouse from the start, the emails lose their privileged nature.

In addition, finding the communications privileged is consistent with the Third Restatement:

> The presence of a stranger to the lawyer-client relationship does not destroy confidentiality if another privilege protects the communications in the same way as the attorney-client privilege. Thus, in a jurisdiction that recognizes an absolute husband-wife privilege, the presence of a wife at an otherwise confidential meeting between the husband and the husband's lawyer does not destroy the confidentiality required for the attorney-client privilege.[31]

The Iowa Supreme Court has favorably cited the Third Restatement on several occasions when analyzing attorney-client privilege.[32]

Ultimately, I find that given Iowa's marital communications privilege, the presence of Rettig's spouse on attorney-client privileged emails does not destroy their confidentiality such that the attorney-client privilege does not apply. OvaInnovations need not produce those emails claimed as attorney-client privileged despite their inclusion of Rettig's spouse.

---

2020 WL 9602038, at *4 (S.D. Ind. Dec. 10, 2020) (applying California law) (noting client's wife's interest in the litigation because it "will affect her household's financial situation" was insufficient to show her presence was "reasonably necessary").

[31] **Restatement (Third) of the Law Governing Lawyers § 71 cmt. b** (2000).

[32] *See* **Keefe v. Bernard**, 774 N.W.2d 663, 670 & n.7 (Iowa 2009); **State v. Parker**, 747 N.W.2d 196, 204 (Iowa 2008); **Tausz v. Clarion-Goldfield Cmty. Sch. Dist.**, 569 N.W.2d 125, 128 (Iowa 1997).

### III. CONCLUSION

I **GRANT IN PART AND DENY IN PART** the motion to compel (Doc. 285). **By June 6, 2023**, Defendants must produce emails between Rettig, his wife, and third parties withheld only on the basis of "spousal privilege" on the privilege log. Defendants need not produce communications solely between Rettig and his wife (and no one else), nor emails claimed as attorney-client privileged that also included Rettig's wife.

**SO ORDERED** on May 31, 2023.

*Kelly K.E. Mahoney* (signature)
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa